UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DEBVONNE LAMAR MARSH,

        Plaintiff,   Case No. 2:16-cv-167

v.   Honorable Paul L. Maloney

CORIZON MEDICAL SERVICES,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Debvonne Lamar Marsh, a state prisoner currently confined at the West Shoreline Correctional Facility in Muskegon, Michigan, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Corizon Medical Services, Inc. In his complaint, Plaintiff alleges that between March 18, 2014, and March 31, 2014, he was tested for all sexually transmitted diseases at the Charles Egeler Reception and Guidance Center. Plaintiff's tests all came back negative.

Plaintiff alleges that while he was confined at the Marquette Branch Prison (MBP), he began to suffer from stomach pains. Plaintiff kited Corizon Medical Service and on March 17, 2016, Plaintiff was seen by a male medical provider, who examined Plaintiff and prescribed antacid and anti-gas pills.

Sometime between March 1, 2016, and April 22, 2016, Plaintiff received a call out from the Assistant Deputy Warden for a scheduled appointment with Corizon Medical Service. During the appointment, a male medical provider drew three tubes of blood from Plaintiff's right arm, but did not explain what tests would be done. Plaintiff claims that the equipment used for the blood draw was not taken from a box or package, but was laying out in the open when Plaintiff arrived in the room. As soon as Plaintiff's blood was drawn, he noticed coldness and tingling in his left leg, and Plaintiff suffered from a runny nose for approximately a week after the blood draw. On April 22, 2016, Plaintiff sent a medical kite to Corizon, requesting to be tested for "all sexual transmitted diseases" due to the symptoms Plaintiff had been experiencing since the blood draw. Plaintiff was called out for an appointment regarding his request to be tested for sexually transmitted diseases (STDs) sometime between April 25 and June 12 of 2016.

After the appointment, Plaintiff began to experience night sweats, headaches, and muscle loss in his right arm. Plaintiff kited Corizon again, asking to be tested for STDs.

On June 17, 2016, Plaintiff was seen by a male medical provider, who drew one tube of blood to be sent for testing. On June 22, 2016, Plaintiff was seen by a female RN, who told Plaintiff that his HIV test was negative. However, Plaintiff claims that his middle initial was listed incorrectly as W., when Plaintiff's middle initial is actually L. Plaintiff asserts that this proves that the test results did not belong to him. Plaintiff contends that he can see the damage that HIV is doing to his body, but is unable to receive proper treatment because of the false test result.

On July 1, 2016, Plaintiff informed a Corrections Officer that he was dizzy and nauseated and needed to go to medical. The Corrections Officer called Corizon and spoke to a male staff member, who stated that if Plaintiff's symptoms continued in the next hour, he should come to medical to be evaluated. Plaintiff's symptoms continued and he was sent to medical. Plaintiff states that he was accompanied by a Corrections Officer, and that the male RN who saw Plaintiff on behalf of Corizon would not see Plaintiff without the officer being present. Plaintiff states that he was uncomfortable discussing his concerns in the presence of a Corrections Officer. In addition, the RN did not properly evaluate Plaintiff for his symptoms.

On July 5, 2016, Plaintiff was called to medical, where his temperature and vital signs were taken and a male physician's assistant asked Plaintiff about his eye. Plaintiff told the physician's assistant that he was seeing the HIV/AIDS virus through his right eye. The physician's assistant told Plaintiff that was impossible because the virus was microscopic. The physician's assistant scheduled Plaintiff for an appointment with an eye specialist. Plaintiff told the physician's assistant about his night sweats, headaches,

Case 2:16-cv-00167-PLM-TPG ECF No. 15 filed 10/05/16 PageID.81 Page 4 of 7

and muscle loss, and stated that something was "moving around in his stomach." The physician's assistant examined Plaintiff's stomach with a stethoscope, but could not determine what was moving in Plaintiff's stomach. Plaintiff was given milk of magnesium.

On July 6, 2016, Plaintiff was seen by a male RN, who examined Plaintiff and asked him about his dizziness and nausea. Plaintiff stated that the HIV/AIDS virus that he could see with his right eye was causing the symptoms. The RN states that Plaintiff's HIV test was negative and that Plaintiff would not be able to see the HIV virus with the naked eye. Plaintiff asserted that the HIV test results were fabricated and told the RN about his night sweats, headaches, and muscle loss. The RN then contacted Social Worker Sarah or Sharon Miller on Plaintiff's behalf. Ms. Miller came to medical and asked Plaintiff questions such as the date, Plaintiff's current location, the name of the president, and whether he thought about harming himself.

Plaintiff claims that he has been infected with HIV by a blood draw conducted by a Corizon employee and that his HIV positive status has been concealed by fabricated test results. Plaintiff seeks to be tested for HIV by an independent medical provider, immediate treatment for HIV/AIDS, and damages.

## Discussion

I. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff's complaint consists of nothing more that his delusional assertions regarding his belief that a blood draw by medical personnel resulted him contracting the AIDS virus, and that employees of Defendant Corizon covered this up by falsifying Plaintiff's test results to show that he was HIV negative. Plaintiff further alleges

that he can "see" the HIV virus with his right eye. The court's initial assessment of the *in forma pauperis* Plaintiff's factual allegations must be "weighted in favor of the plaintiff." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). However, the court is not bound to accept all factual allegations as true. *Id.* While the court cannot dismiss a case simply because the court finds the factual allegations to be improbable or unlikely, *Id.*, the court may dismiss a case as frivolous where the facts alleged rise to the level of the irrational or are wholly incredible, *Id.*; fanciful, *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); fantastic, *Id.* at 328; or delusional. *Id.*

Moreover, the only defendant in this case is Corizon Medical Services. In order to prevail on a § 1983 claim against Corizon, Plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). In this case, Plaintiff fails to allege any specific policy on the part of Corizon that caused Plaintiff's alleged HIV infection or resulted in the subsequent cover-up. Therefore, Plaintiff's claims against Defendant Corizon lack merit.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court further concludes that Plaintiff's pending motions for preliminary injunction (ECF Nos. 5 and 10) are properly denied as moot.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir.

1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An Order and Judgment consistent with this Opinion will be entered.


Dated:   October 5, 2016            /s/ Paul L. Maloney
                                    Paul L. Maloney
                                    United States District Judge